### TEXAS EMPLOYERS' INSURANCE ASSOCIATION V. LEONA INGE ET AL.

No. A-1418. Decided January 21, 1948.
(208 S. W., 2d Series, 867.)

*Hart Johnson,* of Ft. Stockton, *Whitaker, Turpin, Kerr, Smith & Brooks,* of Midland, *Black & Stayton* and *John W. Stayton,* of Austin, for petitioner.

*Travers Crumpton,* of Fort Stockton, for respondents.

MR. JUSTICE HART delivered the opinion of the Court.

This suit was brought by the widow and children of T. G. Inge under the Workmen's Compensation Law to recover compensation for his death. The petitioner is the insurance carrier for P. W. Appleby, a drilling contractor, who had employed Inge as a "roughneck" in a drilling crew. The facts were stipulated by the parties and the only matters in dispute were the legal questions whether Inge, at the time of his death, was acting in the course of his employment as an employee of Appleby or, conversely, whether he was then acting outside of the course of his employment and was then an independent contractor. The district court rendered judgment in favor of the plaintiffs, and this judgment was affirmed by the Court of Civil Appeals, 209 S. W. (2d) 435.

The parties' stipulation shows that Appleby was drilling a well for oil and gas at a location about 31 1/2 miles from the city of Fort Stockton in an isolated portion of Pecos County where housing facilities were not available. H. W. Jones, one of Appleby's drillers on this job, was authorized to employ other men to complete the drilling crew. Jones hired Inge as a "roughneck" on July 1, 1945, and then told Inge that he would be paid wages at an hourly rate while working at the drilling site. Jones also told Inge that all workmen on this job went to and from work in private cars belonging to one of the workmen and that the workman furnishing his car for the transportation of himself and his fellow workmen would receive a travel remittance of seven cents per mile, the round trip distance being fixed at 63 miles. Under this arrangement, Inge went to work for Appleby and used his own automobile to transport himself and his fellow workers to and from the well site. He was paid his wages on an hourly basis and also received the sum of seven cents per mile for such transportation. He received no wages for the time consumed in traveling to and from the drilling location. No deduction for social security or withholding taxes was made by the employer from the amount of the mileage paid to Inge.

On August 7, 1945, after completing his regular hours of work at the well site, Inge started to drive to his home in Fort

Stockton in his own automobile, accompanied by two other members of his drilling crew. While Inge was driving on the highway leading to Fort Stockton and at a point about 14 miles from the drilling location and about 17 1/2 miles from Fort Stockton, Inge's car collided with a truck belonging to a third party, and Inge then suffered injuries from which he died at the scene of the accident.

The parties stipulated that Appleby did not direct Inge to transport himself and the other workmen to and from the well site, but left it to the workmen themselves to choose which one should use his car for this purpose. Since Inge was the only workman in his crew who owned an automobile, he naturally used his car. No directions were given by Appleby as to the route or time schedule which would be followed, except that the workmen were required to be at the drilling site in time to begin their tour of duty and were not permitted to leave until their regular working hours had been completed. Appleby did not furnish gasoline or oil for Inge's automobile, nor did he make or pay for any repairs on it. Neither Appleby nor any of his agents undertook to supervise the speed or any other details of the manner of driving Inge's automobile, nor did they make any inspection of it. At the time he was killed Inge was not transporting any equipment or other property belonging to Appleby, and was not going after anything on the request of Appleby or any of his agents. Inge was simply transporting himself and his fellow workers to their homes in Fort Stockton under the arrangement outlined above.

■ Petitioner contends that at the time he was killed Inge was not acting in the course of his employment. Article 8309, Vernon's Texas Civil Statutes, after making certain exclusions, provides that the term "injury sustained in the course of employment" shall include "injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere." It is apparent that under the express provisions of this statute, the mere fact that the fatal wreck occurred on the State highway and not on the employer's premises would not necessarily preclude recovery, if under the facts of this case it can be said that the injuries have to do with and originate in the work of the employer and were received by Inge while engaged in or about the futherance of the employer's affairs or business. Lumberman's Reciprocal Ass'n. v. Behnken, 112 Texas 103,

246 S. W. 72; Federal Underwriters Exchange v. Lehers, 132 Texas 140, 120 S. W. (2d) 791; Hartford Accident & Indemnity Co. v. Bond, 199 S. W. (2d) 293 (writ of error refused, no reversible error).

■ The general rule is that workmen while going to and returning from work are not acting in the course of their employment. Smith v. Texas Employers' Insurance Association, 129 Texas 573, 105 S. W. (2d) 192; Lawler, "Texas Workmen's Compensation Law," Sections 97-103; 45 Texas Jurisprudence 523, "Workmen's Compensation," Section 118; Horovitz, "Current Trends in Basic Principles of Workmen's Compensation," 12 Law Society Journal, 465, 671. This Court has held, however, that this general rule is not applicable and that the workman is acting in the course of his employment when he is going to or returning from work in cases where the transportation is furnished by the employer as a part of the contract of employmen. Fritzmeier v. Texas Employers' Insurance Association, 131 Texas 165, 114 S. W. (2d) 236, 247; Western Indemnity Co. v. Leonard (Com. App.) 248 S. W. 655; compare Employers Reinsurance Corp. v. Jones, 195 S. W. (2d) 810 writ of error refused, no reversible error) ; Employers' Liability Assurance Corp. v. Young, 203 S. W. (2d) 822 (writ of error refused, no reversible error, 146 Texas 168, 204 S. W. (2d) 833) 45 Texas Jurisprudence, 526, "Workmen's Compensation," Section 119.

No case involving the factual situation presented here has previously been decided by this Court, but almost the same facts were presented in a decision by the United States Circuit Court of Appeals for the Fifth Circuit in Maryland Casualty Co. v. Mason, 158 Federal (2d) 244, which arose under the Texas Workmen's Compensation Law. There, as here, an arrangement was made by a drilling contractor to pay one of the drilling crew on a mileage basis for transporting himself and his fellow workers to and from the well location, and it was held that the workers so being transported were acting within the course of their employment. Substantially the same facts were involved also in In Re Jensen, _____ Wyo. _____, 178 Pac. (2d) 897, and the same conclusion was reached there. The Supreme Court of the United States has likewise construed the District of Columbia's Workmen's Compensation Act in the same way in a case where one workman in his own car was transporting himself and other workmen to and from the employer's premises, and where the employer was paying a fixed sum to each workman as transportation expenses. Cardillo v.

Liberty Mutual Insurance Co., 330 U. S. 469, 67 Sup. Ct. 801, 91 Lawyers Edition 743.

We believe that the reasoning of these cases is sound and that it is applicable here. The location of the drilling site in an uninhabited area made it essential that Appleby furnish transportation to his employees in order to induce them to work on this job. The substance of the arrangement was that the members of the drilling crew were being transported to the well location free of cost to them; and this was an important part of their contract of employment. Those workmen riding in Inge's automobile were given free transportation and the mileage fee paid to Inge presumably was sufficient to take care of his expenses in operating his own automobile. Due to wartime conditions then existing, the arrangement which was made was probably the only one which was practical under the circumstances. The employer's affairs and business were being furthered by the transportation of the members of the crew to and from the well site in Inge's automobile as effectively as if the employer himself owned the automobile which was being used.

The petitioner contends, however, that while the cited cases would be authority for holding that the other employees, who were riding in Inge's automobile, were acting in the course of their employment and were covered by the Workmen's Compensation Law, the same result does not follow as to Inge, who was operating his own automobile at the time he was killed .In support of this contention it is argued that under the stipulated facts Inge was not an employee of Appleby at the time of his death, but in transporting himself and his fellow workers to and from the well location he was acting as an independent contractor.

The Workmen's Compensation Act extends benefits only to employees, and independent contractors are excluded. Article 8309, Section 1, Vernon's Texas Civil Statutes; Shannon v. Western Indemnity Co. (Com. App.) 257 S. W. 522; 45 Texas Jurisprudence 415, "Workmen's Compensation," Section 40. We do not think, however, that the record in this case justifies the conclusion that as a matter of law Inge was acting as an independent contractor and not as an employee of Appleby at the time of his death.

■ Undoubtedly the main object and purpose of the contractual relation between Appleby and Inge was to secure for Appleby

the services of Inge as a member of his drilling crew. During the time when Inge was working at the drilling location he unquestionably was Appleby's employee and was entitled to the benefits of the Workmen's Compensation Act. We do not think that he stepped out of his role as an employee and became an independent contractor when he started on his way home in his automobile with his fellow workers. The arrangement for use of Inge's automobile was a part of his contract of employment, and the transportation of himself and the other members of his crew to and from the well site was simply an incident to the performance of such employment. The arrangement was made with Inge for this transportation only because Inge was one of the members of the drilling crew and he happened to be the only member of his crew that owned a car that could be used for this purpose. Inge was not in the independent business of carrying passengers for hire. Transporting himself and the other workers to and from the place of work was merely part of his job as a member of the drilling crew working for Appleby under the particular circumstances of this case.

Our conclusion that Inge is covered by the Workmen's Compensation Law is supported by decisions in other states where almost identical contracts were involved. In Barrington v. Johnn Drilling Co., 51 N. Mex. 172, 181 Pac. (2d) 166, the facts showed that the decedent was a driller engaged in drilling a well for oil and gas at a point about 30 miles from Hobbs, New Mexico, and that he was paid by his employer seven cents per mile for transporting himself and other members of the crew to and from the drilling site, in addition to his regular wages. While he was engaged in transporting himself and other members of the drilling crew from their place of work to their homes at Hobbs, he was killed in an accident on the highway. The Supreme Court of New Mexico held that at the time of the accident the decedent was acting in the course of his employment for the drilling company.

Similarly, in Trussless Roofing Co. v. Industrial Accident Commission, 119 Cal. App. 91, 6 Pac. (2d) 254, the court held that the driver and all other employees riding with him were covered by the Workmen's Compensation Law where they were riding in the private automobile of the driver under an arrangement whereby the driver of the automobile was paid six cents per mile by the employer for transporting himself and the other employees to and from the place of work.

In Columbia Casualty Co. v. Kee, 11 S. W. (2d) 529, a court

of civil appeals decision in which no application for writ of error was made to this Court, it was held that where one member of a drilling crew was directed by his foreman to use his own car to transport himself and other members of the crew to a drilling site, the worker owning and driving the automobile was acting in the course of his employment while driving on the highway. It is true that in the present case Inge was not chosen by his foreman as the member of his crew to drive the automobile, but we do not think that this is important, for the reason that the members of the crew were authorized by their employer to choose one of their own number to perform the act of transportation and Inge was chosen under this authority.

Petitioner relies upon the case of Republic Underwriters v. Terrell, 126 S. W. (2d) 752, a court of civil appeals decision in which no application for writ of error was made to this Court. In that case it was held that a refinery emeployee who was driving to the place of work in his own automobile by himself, under an arrangement whereby his gasoline was furnished to him by his employer, was not acting in the course of his employment. We think that the case may be distinguished from the present case upon the facts, in that it is not shown that the agreement to furnish gasoline for the employer's car was as much an essential and integral part of the contract of employment as was the arrangement made in the present case. However, to the extent that said decision conflicts with our holding here, we decline to follow it.

■ We do not think that the fact that Appleby did not undertake to supervise the details of the operation of the automobile by Inge to and from the drilling site is of controlling importance here. In this respect, this case is no different from the cases decided in other jurisdictions, cited above, in which workmen's compensation acts were held to be applicable. It seems reasonable to infer that the reason no actual supervision of details was exercised by Appleby in this case was that it was simply regarded as unnecessary. For his own safety, as well as for the safety of his fellow workers, it would naturally be presumed that Inge would use reasonable care in operating his automobile and in keeping it in repair. Since the mileage paid was fixed on the basis of the shortest route between Fort Stockton and the well site, there was no necessity for the employer to prescribe the route which should be followed. The record does not negative the power of Appleeby to control such details if the occasion should have arisen when the necessity for such superevision might appear, and we think there was reasonable

basis in the record for the district court to reach the conclusion that the general power of supervision, implicit in the contract of employment, was not relinquished. Compare Ochoa v. Winerich Motor Sales Co., 127 Texas 542, 94 S. W. (2d) 416; King v. Galloway, (Com. App.) 284 S. W. 942. Nor do we think it important that Inge was compensated for transporting himself and his fellow workers on a mileage basis and not on an hourly basis. The method of payment is a relatively unimportant element in determining whether the workman is an employee or an independent contractor. See Maryland Casualty Co. v. Kent (Com. App.) 3 S. W. (2d) 414; 45 Texas Jurisprudence, 418, "Workmen's Compensation," Section 40. We also consider the fact that the employer did not make deductions from the travel remittances for social security and withholding taxes as having no material bearing on the issue here involved.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 21, 1948.