**AMERICAN TRUST LIFE INSURANCE COMPANY, Appellant,**

v.

**Alvaro DOMINGUEZ et al., Appellees.**

No. 13521.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 18, 1959.

Rehearing Denied Dec. 16, 1959.

Cox, Patterson, Freeland & Horger, Dave Horger, Jr., R. D. Cox, Jr., McAllen, Thompson, Coe & Cousins, Dallas, for appellant.

Ewers, Toothaker, Ewers, Elick, Jones & Abbott, Rafael H. Flores, McAllen, for appellees.

POPE, Justice.

This is a suit for recovery of death benefits under a policy called a "Migratory Worker's Group Life and Blanket Accident and Sickness Policy," issued by defendant, American Trust Life Insurance Company. Plaintiff, the Mexican Consul at McAllen, Texas, sued as trustee for the survivors of four persons killed in an automobile accident, and the trial court gave judgment for plaintiff. There was no jury.

Insurer urges that the court erred, because (1) the death did not arise solely out of and in the course of employee's occupation or employment for wage or profit, and (2) there was no proof of insurance coverage at all.

The four decedents came to the United States from Mexico to work for East La Villa Farmers' Cooperative Society. They were among a group who were contracted to work for the Society under the terms of the Migrant Labor Agreement of 1951. The contract, known as the Standard Work Contract, provides that such employees have the right to make purchases at the place of their choice, and shall be given the opportunity, once each week, to go to places where they can buy. The contract provided also, that the "Employer will make arrangements for transportation." [1]

The Society purchased an insurance policy known as "Migratory Worker's Group Life and Blanket Accident and Sickness Policy." It provided for death benefits upon named employees, including the four decedents, in the amount of $1,500 each. Insurer paid those benefits. By another clause, the policy provided indemnity in the amount of $1,000 for "Loss of life resulting solely from occupational injury." Occupational injury was defined to mean "injury * * * that arises solely out of and in the course of employee's occupation or employment for wage or profit." Insurer refused to pay claims under this clause and contends that the trial court erred in granting judgment for the $1,000 for each of the four decedents because death did not result solely from occupational injury.

The Society delivered a group of the farm laborers to Bell Brothers, one of its members. The employees, including the

four decedents, had worked for about three weeks. They were paid each Saturday. On the third Saturday they received their week's wages. They had not been to town during the week, as permitted by the contract, and Saturday was the only day they could purchase their necessary groceries and supplies. Bell Brothers furnished their employees living quarters, water and cooking utensils, but no groceries. There was no public transportation from the farm to town, which was eight miles away. There was a country store about one mile from the farm, which was in walking distance.

A store owner in Edcouch desired to furnish a truck to transport the employees from the farm to Edcouch, and the Bell Brothers' foreman permitted the employees to decide whether they desired this service. The employees decided to go to Edcouch in the store owner's truck on Saturday, when Bell Brothers paid them. The foreman was present when they boarded the truck for Edcouch. Because of the arrangement, Bell Brothers did not then have their own vehicles available, but could have provided vehicles, as they had done on two previous Saturdays. On the way to Edcouch, the truck turned over and the four employees were killed.

■■■ The deaths resulted solely from occupational injury as held by the trial court. The terms of the contract of employment may limit or broaden the ambit of the employment. Texas Employers' Ins. Ass'n v. Inge, 146 Tex. 347, 208 S.W.2d 867; Mercury Life Insurance Co. v. Mata, Tex.Civ.App., 310 S.W.2d 130. Here the employer was under a duty to "make arrangements for transportation." It was in compliance with this employment contract that these employees were on their way to

---

1. "11. Right To Purchase at Place of Choice.—The Mexican Worker shall be free to purchase articles for his personal use, in places of his own choice and shall be given an opportunity, once each week, to go to locations where he can obtain the articles desired.

"Where the location of employment is not within walking distance of the town offering the desired articles and public transportation is not available, the Employer will make arrangements for transportation."

town by transportation arranged by the employer. Accordingly, the deaths resulted solely from occupational injury. In our opinion, this case is controlled by Texas Employers' Ins. Ass'n v. Inge, supra. Accord, Fritzmeier v. Texas Employers' Ins. Ass'n, 131 Tex. 165, 114 S.W.2d 236; Shaver v. Allstate Insurance Co., Tex.Civ. App., 289 S.W.2d 429; Texas Employers' Ins. Ass'n v. Herron, Tex.Civ.App., 29 S. W.2d 524, 527.

By other points, insurer says that plaintiff failed to prove the existence of an insurance policy at all. The plaintiff alleged that he did not have a copy of Insurance Policy No. 50014, covering the employees, but that insurer did, and called upon insurer to produce it or secondary evidence would be offered. Insurer did not produce the policy. Plaintiff then subpoenaed Mrs. Ernest Drawe, who was acting manager for the Society who contracted for the employees from Mexico. She produced a policy executed by defendant insurer. It bore No. 50014C. Because of the slight variance in number, it does not follow that plaintiff failed to prove that the employees were insured. Whether by Policy No. 50014 or Policy No. 50014C, there was insurance as alleged.

With great thrust and parry, proof was offered and challenged to fill a claimed hiatus between the policy and the specific employees. Proof was amply provided by two answers that insurer made in response to a request for admissions. It admitted that "as to each employee" Section II of the policy provided for benefits of $1,000 for loss of life resulting solely from occupational injury, and Section V provided for $1,500 for death from any cause. Insurer also admitted liability under Section V of the policy, but denied liability under Section II. These admissions prove the existence of the policy for the benefit of these employees. They showed a denial of liability because of its disputed meaning, but not because there was no policy.

The judgment is affirmed.