**ST. PAUL MERCURY INS. CO., Appellant,**

v.

**M. C. DORMAN and Ruby M. Smertelny, Appellees.**

No. 6997.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 21, 1960.

Rehearing Denied Dec. 27, 1960.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellant.

Gordon, Gordon & Buzzard, Pampa, Merchant, Fitzjarrald, Poole & Merchant, Amarillo, for appellees.

NORTHCUTT, Justice.

This is an appeal from a judgment entered by the District Court of Donley County, Texas, upon a jury verdict in favor of appellees, who were cross plaintiffs, against the appellant under the provisions of the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., by reason of the death of appellees' son, Leland Clyde Dorman, who was killed on November 24, 1958, while allegedly in the course of his employment for Groninger & King.

The case was submitted to a jury upon two special issues. Special Issue No. I asked the jury if Leland Clyde Dorman was an employee of Groninger & King on November 24, 1958, at the time he sustained the fatal injuries. Special Issue No. II asked the jury if Leland Clyde Dorman sustained a fatal injury on November 24, 1958, in the course of his employment, if any, with his employer, if any, Groninger & King. The jury answered both issues in the affirmative.

Groninger & King, whose main headquarters was in Pampa, Texas, were at the time in question, constructing a pipe line near Sonora, Texas. There is no question but what Leland Clyde Dorman had been working for Groninger & King in constructing the pipe line at Sonora, and the job had been completed about 3:30 in the afternoon of November 24, 1958. After completing the laying of the pipe line, Don Gallaher, Clyde Dorman, and Boyd Bennett started to their home in Pampa, Texas, and on their way back to Pampa, Bennett and Dorman were killed.

Although appellant presents this appeal upon twelve points of error, we are of the opinion that all are determined by whether or not Dorman, under the facts introduced, was killed while he was an employee of Groninger & King; whether he was killed while engaged in the course of his employment, or while he was engaged in or about the affairs or business of his employer; and whether a contract existed either expressed or implied to pay Dorman's travelling expenses or furnish him transportation to and from the job.

It is stated in the case of Texas Employers' Ins. Ass'n v. Inge et al., 146 Tex. 347, 208 S.W.2d 867, 868, by the Sup. Ct. as follows:

"The general rule is that workmen while going to and returning from work are not acting in the course of their employment. Smith v. Texas Employers' Insurance Association, 129 Tex. 573, 105 S.W.2d 192; Lawler, Texas Workmen's Compensation Law, Sections 97–103; 45 Texas Jurisprudence 523, Workmen's Compensation, Section 118; Horovitz, Current Trends in Basic Principles of Workmen's Compensation, 12 Law Society Journal, 465, 671. This Court has held, however, that this general rule is not applicable and that the workman is acting in the course of his employment when he is going to or returning from work in cases where the transportation is furnished by the employer as a part of

the contract of employment. Fritzmeier v. Texas Employers' Insurance Association, 131 Tex. 165, 114 S.W.2d 236, 247; Western Indemnity Co. v. Leonard, Tex.Com.App., 248 S.W. 655; Compare Employers Reinsurance Corporation v. Jones, Tex.Civ.App., 195 S.W.2d 810, writ of error refused, no reversible error; Employers' Liability Assurance Corporation v. Young, Tex. Civ.App., 203 S.W.2d 822, writ of error refused, no reversible error; Id., Tex. Sup., [146 Tex. 168] 204 S.W.2d 833; 45 Texas Jurisprudence 526, 'Workmen's Compensation', Section 119."

It is also stated in American General Insurance Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370, 374 by the Sup. Ct. as follows:

"The general rule is well settled that an injury incurred in the use of public streets or highways in going to and returning from the place of employment is not a compensable injury because not incurred in the course of the employment as required by Article 8309, Vernon's Annotated Texas Statutes. Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192, 193; United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210; Texas Employers' Ins. Ass'n v. Inge, 146 Tex. 347, 208 S.W.2d 867, 868–869; American Indemnity Co. v. Dinkins, Tex.Civ.App., 211 S.W. 949, writ refused. There are exceptions to the rule. An injury incurred in going to or returning from work is held to be in the course of a workman's employment where the means of transportation is furnished by the employer. Fritzmeier v. Texas Employers' Ins. Ass'n, 131 Tex. 165, 114 S.W.2d 236; Jones v. Casualty Reciprocal Exchange, Tex.Civ.App., 250 S.W. 1073, writ refused. So, also, where the employer pays another to transport the injured employee. Texas Employers' Ins. Ass'n v. Inge, 146 Tex. 347, 208 S.W.2d 867, 868–869."

The question here then to be determined is whether the transportation was furnished by Groninger & King as a part of the contract of employment or whether the transportation was furnished by Groninger & King without a contract.

In the case of Texas Employers' Ins. Ass'n v. Knipe, 150 Tex. 313, 239 S.W.2d 1006 by the Sup. Ct., the sole question to be determined was whether or not Knipe was injured in the course of his employment, and the court stated if there was any evidence to support the findings of the jury, the case should be affirmed.

■ This record is clear that Bennett was foreman over a part of the work performed for Groninger & King and had the right to hire a man and take him down to Sonora and had the right to take the man hired in the pickup furnished to Bennett by Groninger & King. Bennett took Dorman from Pampa to Sonora in the pickup furnished him by Groninger & King. The men working on the pipe line in question stayed in Sonora and were transported each morning by Groninger & King from Sonora to where the work was performed and transported them back that evening. On November 24, 1958, the day of the accident, Dorman was transported by Bennett in Groninger & King's pickup from Sonora to the job in question. The job was completed sometime about 3:00 p. m. on November 24, 1958 and Bennett stated to Dorman: "Come on, let's go home". Then when Gallaher, Dorman and Bennett left for Pampa in the Groninger & King pickup driven by Bennett, on their way back to Pampa, Bennett and Dorman were killed. It is undisputed that the employees, including Dorman, were transported by Groninger & King from Sonora to the pipe line where they were working, a distance of approximately 20 miles. The place where the job was completed was between Sonora and Pampa. Dorman had no other transportation from the job except in the Groninger & King pickup. Bennett had to take Dor-

man back to Sonora or leave him without any transportation or take Dorman with him to Pampa. To take Dorman back to Sonora would cause Bennett to have to drive approximately 40 miles extra.

If the only facts were that Dorman was working by the hour, and the job was completed, and he was on his way home when injured, the determination as to whether he was an employee and in the course of his employment would be a question of law but under this record there are other matters to be determined. Mr. Sikes, one of the owners of Groninger & King, testified he would tell his foreman that Groninger & King had a job at a certain place and for the foreman to take as many of the crew that would go to the job. One of the foremen testified it was the policy to pay top hands for both ways to and from the job; then testified that Dorman was a good hand and that he turned in travel time both ways for good men and he had never been criticised for turning in travelling time both ways for good men. One of the employers testified he always got paid for going to a job away from Pampa and returning to Pampa.

It was necessary under the arrangements made or lack of arangements for Dorman to have some means of transportation from Pampa to the job at Sonora and also to return to Pampa after the job was completed. It is plain that the means employed must have been necessarily known to the employer and to have been tacitly approved and consented to by them. In the case of Traders & General Ins. Co. v. Nunley, Tex. Civ.App., 80 S.W.2d 383 (writ refused), it was held under like facts as here involved, except the injury occurred while going to the job instead of returning from the job, that the testimony that the employee was injured in a wreck while on his way to the job with other employees in a truck and trailer owned by the fellow employee, as directed by company's foreman, was sufficient to sustain the jury's finding that he received injury in the course of his employment.

We think the question as to whether coverage to employees while going to and from their place of employment is recoverable depends upon the facts of each case. It seems clear that under the Texas Statute, injuries are compensable which result from risks inherent in, or incident to, the conduct of the employer's business without regard to the time or place the accident occurred. It is generally accepted that the agreement of an employer to provide transportation for his employees need not be expressed but may be implied from the nature, conditions and circumstances of employment and the custom of the employer to provide transportation. While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either expressed or be shown by the course of business. In such case the hazard of the journey may properly be regarded as hazards of the service, hence, within the purview of the compensation act.

We are of the opinion, under this record, the jury was justified in holding that Dorman was an employee at the time he sustained the fatal injury and sustained the fatal injury in the course of his employment. Judgment of the trial court is affirmed.