**Alfred D. HUGHES; J. Scott Gregson; L. Michael O'Neal; Brenda Hughes Nelson, as Trustee for the Lance R. Hughes Management Trust; and Lance R. Hughes, as Trustee for the Brenda Hughes Nelson Management Trust, Appellants,**

v.

**ST. DAVID'S SUPPORT CORPORATION, Appellee.**

No. 03–96–00197–CV.

Court of Appeals of Texas, Austin.

March 6, 1997.

Rehearing Overruled May 22, 1997.

Charles M. Craig, Gray & Becker, P.C., Austin, for Appellants.

---

1. *See* Tex.R.App. P. 90(d).

Scott R. Kidd, Brown McCarroll & Oaks Hartline, Austin, for Appellee.

Before POWERS, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

This appeal presents us with the question of whether a general partner owes a fiduciary duty of notice to its limited partners when it sells assets under its control. Because we conclude that such a duty exists, we will reverse the trial court's summary judgment and remand the cause for a trial on the merits.

## BACKGROUND

The St. David's Health Care System, Inc., (the "System") is a nonprofit corporation that operates St. David's Medical Center in Austin, a complex that includes St. David's Hospital. The System is the sole shareholder of appellee, St. David's Support Corporation ("St. David's"), another nonprofit corporation. In the early 1980's, the Board of Trustees of the System began considering an expansion of the hospital's facilities and services, known as the East Campus Project. Included in this project were plans for the construction of two new hospitals—a psychiatric hospital and a nursing and rehabilitation hospital.

Upon learning of the East Campus project, Alfred Hughes approached the St. David's System proposing to arrange financing for the construction and operation of the new East Campus facilities. Under his proposal, Hughes and his affiliates would form (1) a master limited partnership, interests of which would be sold to the public, and (2) operating partnerships, interests of which would be sold to physicians. The master partnership would fund the construction of the East Campus facilities and then lease them to the operating partnerships, which would actually operate the two East Campus hospitals.

In 1986, the System's Board of Trustees accepted Hughes's proposal, and Hughes be-

gan implementing it. By September of 1987, however, the System had become dissatisfied with Hughes's financing efforts. Therefore, it decided to take over the development of the East Campus Project. Although the System retained Hughes's proposed organizational structure of master and operating partnerships, it financed the construction of the East Campus facilities through the sale of bonds. To compensate Hughes for his endeavors, the System paid Hughes $425,000. As additional compensation, it gave Hughes and his affiliates (the "Hughes appellants") what it described at oral argument as a "royalty interest" in the operating partnerships of the two new East Campus hospitals. We find this description fitting.

The Hughes appellants obtained this "royalty interest" through the creation of an intricate series of interlocking partnerships. The main controlling partnership was called St. David's East Campus, Ltd. ("East Campus, Ltd."). The Hughes appellants owned forty-nine percent of this partnership and were limited partners; conversely, St. David's owned fifty-one percent of the partnership and served as its general partner.

The two East Campus hospitals were each, in turn, operated by limited partnerships— St. David's Psychiatric Center, Ltd., and St. David's Rehabilitation and Nursing Center, Ltd. (collectively the "operating partnerships"). Physicians were to be the limited partners of both of these partnerships.[1] East Campus, Ltd., served as general partner of the operating partnerships and retained a one percent interest in each of them. Thus, the Hughes appellants owned an infinitesimal part—less than one-half of one percent—but a part nonetheless, of the operating partnerships.

In 1991, a problem arose concerning the operation of the two East Campus hospitals. New Medicare regulations restricted physicians' ability to participate in entities that own hospital facilities to which those physicians refer patients. St. David's, as general partner of East Campus, Ltd., determined

1. St. David's could not raise enough capital to operate the hospitals by selling to physicians; therefore, the System also purchased limited partnership interests in the operating partnerships.

that the operating partnerships were potentially in violation of these regulations[2] and devised a solution to this problem: it would sell all operating partnership assets and then dissolve both operating partnerships.

St. David's discussed this solution in a series of meetings with the physician limited partners of the operating partnerships and decided to follow this course of action. It is undisputed in the record, however, that St. David's did not give the Hughes appellants notice of the impending sale or dissolutions. St. David's candidly admitted at oral argument that the reason it did not give the Hughes appellants prior notice was because it was concerned they might impede or possibly stop the sale and dissolution of operating partnerships. St. David's did not want anything to interfere with this sale because it was convinced that continuing to operate the hospitals with physician partners was a violation of Medicare regulations.

From the record, it appears St. David's did not hold the assets out for public bid; instead, it bought the assets itself through private sale. Following the sale, St. David's dissolved the operating partnerships. It then dissolved the master partnership, East Campus, Ltd., and paid the Hughes appellants $19,765, which comprised their approximate one-half of one percent share of the sale proceeds.

The Hughes appellants were of the opinion that St. David's should have notified them of the sale and dissolution and given them an opportunity to participate in the sale. Accordingly, they sued St. David's for breach of fiduciary duty.[3] St. David's claimed it was not required to give notice and, therefore, breached no duty. Both parties moved for summary judgment, and the trial court's final judgment granted St. David's motion. The Hughes appellants bring this appeal, challenging the trial court's summary judgment in seven points of error.

2. Any controversy as to whether this conclusion was correct plays no part of this appeal, and no party contends St. David's reached its conclusion out of ulterior motives.

3. The Hughes appellants also brought claims against St. David's for fraud, breach of contract,

## STANDARD OF REVIEW

In reviewing the trial court's grant of St. David's motion for summary judgment, we must determine whether St. David's met its burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. In deciding whether St. David's met this burden, we accept as true all evidence favorable to the Hughes appellants and indulge every reasonable inference and resolve every doubt in their favor. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). St. David's, as a defendant moving for summary judgment, has the burden of disproving at least one essential element of each of the Hughes appellants' causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Texas Dep't of Transp. v. Shaw*, 847 S.W.2d 618, 620 (Tex. App.—San Antonio 1992, writ denied); *see also Rose v. Odiorne*, 795 S.W.2d 210, 213 (Tex.App.—Austin 1990, writ denied).

## DISCUSSION

■ The touchstone issue in this appeal is whether St. David's owed the Hughes appellants a fiduciary duty that would have included a duty to notify them of the proposed sale of the operating partnerships' assets. We conclude it did.

■ It is well established that partners are charged with a fiduciary duty. *See Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 264–65 (1951); *Bohatch v. Butler & Binion*, 905 S.W.2d 597, 602 (Tex.App.—Houston [14th Dist.] 1995, writ denied). Managing partners owe their copartners the highest fiduciary duty recognized in the law. *Huffington v. Upchurch*, 532 S.W.2d 576, 579 (Tex.1976); *Crenshaw v. Swenson*, 611 S.W.2d 886, 890 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). Furthermore, in a limited partnership, the general partner stands in the same fiduciary capacity to the limited

conversion, negligence, and declaratory relief. All of these claims except the fraud claim were non-suited pursuant to a Rule 11 agreement and are not part of this appeal. We do not address the Hughes appellants' fraud claim because the fiduciary duty issue is dispositive.

partners as a trustee stands to the beneficiaries of a trust. *Crenshaw,* 611 S.W.2d at 890 (citing *Watson v. Limited Partners of WCKT, Ltd.,* 570 S.W.2d 179 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.)). Based on this authority, it is clear St. David's, the general partner of East Campus, Ltd., owed the Hughes appellants, limited partners of East Campus, Ltd., a fiduciary duty.

St. David's contends, however, that even if it owed the Hughes appellants a fiduciary duty, it had no duty to notify them of the asset sale because they were limited partners in East Campus, Ltd., and their ownership interest in the operating partnerships was infinitesimal. While we agree that the Hughes appellants' ownership interest was small, we conclude that they were at least entitled to notice before the operating partnership assets were sold.

Among the duties that a partner owes its co-partners is the duty of "full disclosure of all matters affecting the partnership." *Hawthorne v. Guenther,* 917 S.W.2d 924, 934 (Tex.App.—Beaumont 1996, writ denied); *Bohatch,* 905 S.W.2d at 602. In a limited partnership, the general partner owes the same duty of full disclosure to the limited partners. *Cf. Huie v. DeShazo,* 922 S.W.2d 920, 923 (Tex.1996) ("Trustees and executors owe beneficiaries 'a fiduciary duty of full disclosure of all material facts known to them that might affect (the beneficiaries') rights.' ") (quoting *Montgomery v. Kennedy,* 669 S.W.2d 309, 313 (Tex.1984)). Accordingly, St. David's as general partner was required to disclose all material facts affecting East Campus, Ltd., to its limited partners, the Hughes appellants.

As noted above, the Hughes appellants' interest in the operating partnerships was similar to a royalty interest. We believe this analogy is significant because a limited partner holding a royalty interest is certainly entitled to notice *before* the general partner sells the underlying assets that generate the royalty interest.

We also believe that it is highly significant that the Hughes appellants were the only party involved in the sale and dissolutions that did not receive prior notice. Even the limited partners of the operating partnerships were given such notice. Further, all partnerships involved in the sale of operating partnership assets, including East Campus, Ltd., executed the sale documents. The Hughes appellants, however, did not sign any of these documents. St. David's argues that, as general partner, it was empowered to execute these documents on behalf of East Campus, Ltd. Unquestionably, St. David's did have this power. However, based upon the foregoing authority and discussion, we hold that the Hughes appellants were entitled to notice before St. David's exercised this power.

## CONCLUSION

Because St. David's owed the Hughes appellants a fiduciary duty and because it breached that duty by failing to give them prior notice of the sale of the operating partnerships' assets, we reverse the trial court's summary judgment and remand the cause to the district court for a trial on the merits.

## ON MOTION FOR REHEARING

In its motion for rehearing, St. David's insists that this Court should affirm the summary judgment of the trial court because there exists as unattacked ground upon which the summary judgment was proper. St. David's contends that one of its grounds for summary judgment was that the Hughes appellants' lawsuit was brought for an *improper purpose* and, therefore, because the summary judgment did not specify the grounds upon which it was granted and further because the Hughes appellants did not preserve a point of error attacking this specific issue, the summary judgment must be affirmed. After reviewing the record, we disagree.

The Hughes appellants filed suit against St. David's for various causes of action including breach of fiduciary duty. In its answer, St. David's responded with a general denial and specifically did not plead by way of affirmative defense or plea in bar that the Hughes appellants' lawsuit was brought for an *improper purpose.* The Hughes appellants then moved for summary judgment. In response, St. David's filed a single legal

document entitled "St. David's Response to Plaintiffs' Motion for Interlocutory Summary Judgment." In this document, St. David's alleged that the *damages* sought by the Hughes appellants rightfully belonged to the limited partners of the operating partnerships and, therefore, the Hughes appellants' lawsuit was brought for an improper purpose.

We do not regard such an allegation as an independent ground for the granting of a summary judgment, but rather as a defensive allegation going to the issue of damages. Further, the allegation was never raised in St. David's pleadings and certainly was never specifically alleged as an affirmative defense or plea in bar. Accordingly, we overrule St. David's motion for rehearing.